Jones and Tibbets *v.* Hard.

### JONES & TIBBETS *v.* EDWIN HARD.

*Sale.   Intoxicating Liquor.*

The facts in this case held to constitute a sale of goods from the owner to the bailee, having them in charge, and to render the latter liable to the former for their price in an action of book account.

The sale of liquors imported into this country in accordance with the laws of the United States, while remaining in the original packages in which they were imported, is not prohibited by the laws of this State regulating the sale of intoxicating liquor.

BOOK ACCOUNT.—The account presented by the plaintiffs was for a quantity of brandy, amounting to sixty-four dollars and fifty cents, and a quantity of gin amounting to forty-two dollars, together with interest from April 6th, 1853, and in regard to these items the auditor reported the following facts :

From 1851 until the time of trial, the plaintiffs resided and did business in the city of New York, as importers of and dealers in intoxicating liquors.   The defendant, during the same period, was a resident of Westford in this State, and there followed the business of a tavern keeper, but had at no time a license, under the laws of this State, to sell intoxicating liquors.   In October, 1852, previous to the sixth of the month, Tibbets, one of the plaintiffs, was in Vermont, and there it was arranged between himself and the defendant, verbally, that the plaintiff should send from New York to the defendant, at Westford, a quantity of intoxicating liquors, viz : one cask of brandy and one of Holland gin, at

32

Jones & Tibbets *v.* Hard.

Burlington, Vermont, and to be marked with *a diamond* H. This was not the ordinary mode of marking goods.

The purpose of the defendant was to sell this liquor in his business in violation of the statute then in force, (beyond what might be required for domestic consumption,) and this purpose was known to Tibbets, as also that the defendant had no license or authority to sell.

The direction as to the mode of marking the casks was given by the defendant, and for the purpose of concealing from others, during the transit of the goods, the person for whom, and the use for which, they were intended. This purpose was known to the plaintiffs, and the direction given was followed by them as hereinafter stated,

Tibbets returned to New York, and on the 6th of October, 1852, the plaintiffs forwarded from New York the goods mentioned in their account and directed the casks, by marks upon them, " H., Westfield, Vt." The name *Westfield* was written by mistake for *Westford.*

The goods, instead of being stopped at Burlington, were taken by the railroad company to their depot at St. Albans, where they remained until the night of the 29th of December, 1852, when the defendant took them, after paying the freight upon them, (three dollars and seventy-eight cents,) and removed them to his tavern in Westford and put them in his cellar.

In the mean time the defendant had made several journeys to Burlington and elsewhere to find these liquors, and had been thus put to an expense, including freight paid, of eight dollars and seventy-eight cents.

In the mean time also, the following correspondence passed between the parties by letter :

MESSRS. JONES & TIBBETS, Sirs :—Sometime since a gentleman that I supposed to be an agent of yours, agreed to send me two barrels of liquor to Burlington and send me a bill of the same, and wishing to know whether the critter was on the way I have sent this line. Respectfully yours,

EDWIN HARD.

WESTFORD, October 17th, 1852.

DEAR SIR:—Enclosed please find bill of goods, which were

shipped to your address on the 6th October, which you write us have not been received. The delay may be occasioned by the goods being directed to Westfield instead of Westord, Vermont. You will also find duplicate receipt which we received for your goods, by which you will perceive they were sent to Westfield. Please write us if not yet received, and when received.

And oblige yours respectfully,

JONES & TIBBETS.

This letter was not received by the defendant until November 6th, 1852.

NEW YORK, November 18, 1852.

MR. EDWIN HARD, Sir:—Your favor of the 17th October was received, and we answered it immediately, and have not heard from you since, we therefore wish you would write and inform us if your goods have been received or not,

And oblige yours with respect,

JONES & TIBBETS.

WESTFORD, November 25th, 1852.

MESSRS. JONES & TIBBETS, Sirs:—Not having learned or heard anything about liquor since your agent called on me some two or three months since, and having once called at wharf in Burlington to see if it had arrived, I had given up all expectation of your sending me any liquor, and have not at present any use for the article. Respectfully yours,

EDWIN HARD.

MR. E. HARD, Dear Sir:—Yours of the 25th has just come to hand. We are very sorry that you have not received the liquor we sent you October 6th. We also wrote you a short time ago that we made a mistake in the direction, which should have been Westford instead of Westfield.

We, therefore, wish you would go to Burlington yourself, and see if it is there, and if so take it to your house, and if you do not want it, keep it there until one of us visit your place, and we will pay you all the charges and make it satisfactory to you.

We do not wish to have it remain in the storehouse, as it may be carried off by some one else. Please write us about it on receipt of this, and you will very much oblige

Yours with much respect, JONES & TIBBETS.

The liquor was marked

H., Westfield, Vermont, by way of Burlington.

MESSRS. JONES & TIBBETS, Sirs :—I found your two casks of pure Saratoga water at St. Albans depot last night about eleven o'clock. I put it into my cellar. I think it can remain there ; if the freemen of Vermont should confirm and adopt the liquor bill of the last legislature of our State, referred to the people for their approval or disapproval, I should think you had best to claim it as your property if I should think best to use the same. Respectfully yours,

EDWIN HARD.

WESTFORD, December 30, 1852.

No other communication took place between the parties until the 5th of May, 1853, when Tibbets again went to Westford, and there he and the defendants examined the two casks of liquor. Both casks had been tapped, and they ascertained, by measurement, that a portion of the liquor of each kind had been used. The amount taken from the casks was eight quarts of brandy and five quarts of gin, which had been sold by the defendant.

The expenses of the defendant in procuring the liquors was reckoned and agreed to by the parties, at in all eight dollars and seventy-eight cents ; and the amount of liquor sold at four dollars and twenty-five cents ; leaving a balance to the defendant of four dollars and fifty-three cents.

The casks were then bunged up, and the liquors left as the property of the plaintiffs, subject to the future orders and disposition of the plaintiffs, and the balance due the defendant was to be adjusted when the liquors should be disposed of by the plaintiffs or returned to them.

To this both parties assented.

After this the following letters passed between the parties :

NEW YORK, June 27, 1853.

EDWIN HARD, ESQ., Dear Sir :—When our Mr. Tibbets was at your house the last part of May, he left with the intention of returning, but as it rained quite hard and he was in a great hurry, he did not return after seeing the town agent, to whom he thought that we could sell the liquors we sent you, but he did not

succeed, therefore we think best to have them brought back to this place, and we wish you would have the goodness to ship them per Merchant's Lake Boat Line from Burlington to this place. And you can send your bill by them, or they will pay the charges and we can pay them, just as you prefer.

Yours very truly,

JONES & TIBBETS.<br>No. 166 Front Street.

N. B —We should be glad to sell you the liquors if you think you can dispose of them. Please write us when you ship them, so we shall know when to look after them.      J. & T.

WESTFORD, June 30th, 1853.

MESSRS. JONES & TIBBETS, Dear Sir :—When Mr. Tibbets was at my place the fore part of May. and I accounted with him for some liquors that you wished me to hunt up and take care of, with an understanding that the sale to me should remain a secret with the parties, I did not expect you would be calling on me to ship the same to your place ; but then I suppose you New York liquor gentlemen are inclined to have things about in your own way. I may as well close by subscribing myself

Your most obedient and very humble servant,

EDWIN HARD,

N. B.—The above is in answer to yours of the 27th inst. June.

NEW YORK, July 30th, 1853.

MR. EDWIN HARD, Dear Sir :—Yours of June 30th came duly at hand, and we have been looking for the liquor ever since, but have not heard from it. You did not state you had sent it, but as you said nothing about it we supposed that you had followed our instructions in regard to it.

Therefore, if you have not done it, we wish you would at once, and write us per mail the name of the line and boat, unless you want to keep it and pay for it as per bill.

Yours very truly,

JONES & TIBBETS.

After the 5th of May, 1853, without further correspondence or arrangement between the parties, the defendant sold said liquors in his business by the glass, at the rate of sixty-four glasses

Jones & Tibbets *v.* Hard.

to the gallon and at the price of six and one-quarter cents per glass, and received his pay therefor, which amounted in the aggregate to more than the price charged for the liquor by the plaintiffs.

On the 8th day of February, 1856, the plaintiffs again called on the defendant, at Westford, and demanded of the defendant said liquors, and tendered him fifteen dollars for his charges upon them. The defendant claimed that if he had ever had any liquors of the plaintiffs he had paid for them, but he admitted nothing. The tender was not accepted. The liquors had been already used up.

The brandy charged in the bill was of foreign production, and was imported by the plaintiffs from Rochelle, in France, under the laws of the United States and in accordance therewith, and was in the original package as imported in a quantity not less than the laws of the United States prescribe.

The gin charged was imported liquor, but was not in the original package as imported, but in a quantity less than the laws of the United States prescribe for importation.

: Upon these facts the county court, at the September Term, 1859,—BENNETT, J., presiding,—rendered judgment for the plaintiffs for the whole amount of their account including interest after six months subsequent to October 6th, 1852, to which judgment the defendant excepted.

*J. French* and *E. R. Hard*, for the defendant.

*Geo. F. Edmunds*, for the plaintiffs.

· BARRETT, J. The original negotiation for the purchase of the liquor charged in the plaintiffs' account failed of becoming perfected into a sale by reason of the failure of the plaintiffs to forward it in compliance with their agreement. It had been forwarded to the defendant's address by the mark agreed upon, but was directed to a wrong town. For this reason it failed of going seasonably into his hands. When it became known by the plaintiffs that the defendant had not received the liquor, and that he declined to receive it because it had not come to him within the time agreed, they requested him to seek for and find it, and

Jones & Tibbets v. Hard.

take it home, and, if he did not want it, to keep it till one of the plaintiffs should visit his place, when they would pay him all charges and make it satisfactory.   In pursuance of this request, the defendant found the liquor and took it home and put it into his cellar, and informed the plaintiffs that he had so done by letter dated December 30, 1852, adding " if the freemen of Vermont should adopt and confirm the liquor bill of the last legislature of our State, referred to the people for their approval or disapproval, I should think you had best to claim it as your property, if I should think best to use the same."   Thereupon the liquor remained till the 5th of May, 1853, when one of the plaintiffs went to the defendant and arranged for a settlement of the defendant's charges, by offseting the value of some of the liquors from the casks that the defendant had in the mean time drawed out and sold.   The residue was left with the defendant as the property, and subject to the future orders of the plaintiffs.   The balance due to the defendant was to be adjusted when the liquor thus left with him should be disposed of by the plaintiffs, or returned to them.

On the 27th of June, 1853, the plaintiffs wrote to the defendant concerning said liquor, and in a *postscript* said, " We should be glad to sell you the liquors if you think you can dispose of them."   To this the defendant replied by letter dated June 30th, 1853, in which he professes to understand that the liquor had been sold to him by virtue of what had theretofore transpired, and expresses surprise that they should be calling on him to ship the same to their place, and closes the letter in an obscurity of expression quite wide from frankness, even if it can l e regarded as consistent with honesty.   The plaintiffs answered this letter, saying that they had been looking for the liquor, but it had not come, and requesting that if he had not sent it, he would do so at once, " and write by mail the name of the line and boat, unless he wanted to keep it and pay for it as per bill."

To this letter of the plaintiffs the defendant made no reply. It appears in the case that the defendant had sold out all the liquor prior to said 30th day of June, and taken pay for it.

The foregoing letters show that the idea of a purchase of the liquor was in consideration by both parties; the plaintiffs prof-

fering the sale if the defendant should choose to buy; the defendant by his letter of June 30th, professing to understand that the liquor had been sold to him. In addition to which is the fact that between the 5th of May and 30th of June, the defendant had treated the property as his own, having sold it out by the glass and received therefor something more than the price which the plaintiffs have charged him for it.

We think these facts must be regarded as constituting a purchase of the liquor by the defendant of the plaintiffs "as per bill," that had been furnished about the time the liquor was forwarded from New York. The defendants assuming to use the liquor as his own, in accordance with the plaintiffs' proffer to sell it to him, should entitle the plaintiffs to treat and hold him as a purchaser. His conduct was entirely inconsistent with the idea that he regarded himself as a mere bailee for the safe custody and return of the property to the plaintiffs, and is only consistent with the fact of his regarding himself as a purchaser in pursuance of the proffers of the plaintiffs, unless we are to presume that he designed to embezzle and cheat the plaintiffs out of their property, which, perhaps, might not be regarded as a very violent presumption in the present case. It is to be noticed that the defendant has never denied his having purchased the liquor. In his last letter to the plaintiffs he professes to have understood that he had bought it. In the interview in February, 1856, between the parties, the defendant claimed that if he had ever had any liquor of the plaintiffs he had paid for it, but as the auditor adds, "he admitted nothing." Conformably to this claim, if the defendant did have the liquor of the plaintiffs, it was upon a purchase, as is conclusively implied by the alleged fact of having paid for it.

In the position thus assumed by the defendant the plaintiffs proved that the defendant did have the liquor. This left the parties standing upon the question, first, had the defendant paid for it? The auditor has found that he had not, but that the defendant had a charge of eight dollars and seventy-eight cents for services and freight paid, which the plaintiffs were willing should be applied towards payment for the liquor. Second, is the defendant liable to pay for it?

· The liquor had been sent into the State for the purpose of being sold. It came into the hands of the defendant as bailee, with the right to keep it as a purchaser, or to return it to the plaintiffs upon their order. The defendant chose to keep it as upon a purchase. The sale and delivery must be regarded as having taken place in Vermont. The terms were proposed by letters addressed to, and received by, the defendant in this State. His acceptance of the proposition to purchase was by acts done in this State, as well as the delivery and acceptance of the liquor itself, by which the sale and passing of the title were consummated.

Such sale was made contrary to the terms of the statute of this State, and with knowledge, on the part of the plaintiffs, that the purchaser designed to use it in violation of the law. Hence, within the principle of many decided cases, as also by the express provision of the statute of 1852, prohibiting the sale of intoxi-cating liquors, the plaintiffs are not entitled to recover pay for said liquor unless the transaction is saved by the statutory exemp-tion or otherwise. To this end the plaintiffs invoke the principle established in the case of *Brown* v. *State of Maryland*, 12 Wheat. 409, which has been reasserted and applied by the United States supreme court, in the case of *Thurlow* v. *Massachusetts*, *Fletcher* v. *Rhode Island*, *Pierce et al.* v. *New Hampshire*, 5 Howard 504. The auditor finds that the plaintiffs imported both the gin and the brandy; that the gin was not sent forward in its *original package*, but that the brandy was, and came into the defendant's hands in that condition, and that it was imported conformably to the laws of the United States.

Our statute of 1852, section 12, expressly recognizes the efficacy of the laws of congress under the constitution, to exempt liquor in the condition of the brandy, when it came into the defendant's hands, from liability to seizure and confiscation. We think it is fairly to be implied that the legislature designed to leave such exemption to be operative to every legitimate intent, and thus to permit liquors in that condition to be the subject of lawful sale by the lawful owners thereof. Regarding this view to be well grounded, we prefer to avail ourselves of it in disposing of this case, rather than to enter upon the question of the constitution-

ality of our statute, so far as its prohibitory and penal provisions might be claimed to apply to the sale of *all* intoxicating liquors. The cases above cited would seem to be conclusive upon this subject if it were necessary now to pass upon it.

In our opinion the gin, in the condition in which it came into the defendant's hands, was not within the exemption, and therefore, by reason of the purpose for which it was sent into the State, was *contraband*, and the sale of it to the defendant was a violation of our statute. The cases cited from 5 Howard so decided. On the other hand we regard the brandy, in the condition in which it came into the State and went into the hands of the defendant, to have been the subject of legitimate sale, with which our statute was not intended to interfere.

Hence, in our opinion, the plaintiffs are entitled to recover for the brandy the price found by the auditor. While the view thus taken seems to be sound, it is the only one on which the plaintiffs' right of recovery can be maintained. If it were to be held that the defendant was mere *bailee*, and as such wrongfully converted the liquor, then the plaintiffs' right to recover would rest on the ground of waiving the *tort*, and treating the defendant as their agent in selling out the liquor with full authority thus to do. If this fiction should be adopted, it would be difficult to avoid the consequences flowing from the illegality of such sales as the defendant made of the liquor. If the plaintiffs were thus to subject themselves to the charge of having sold the liquor in violation of the statute, they would fall under the provisions of the 21st section, and thereby be precluded from recovering the price of the liquor thus wrongfully sold by the defendant. This principle is familiar, and its application to this case would not be doubtful. See *Backman* v. *Wright*, 27 Vt. 187. It will be kept in mind that the sale of liquor within this State can be protected only while it is passing in the original package of importation, in such quantity as is prescribed by the laws of congress regulating its importation. Conformably to the views thus presented, the plaintiffs are entitled to recover for the brandy, deducting the four dollars and fifty-three cents, and adding interest to September 30, 1859, the sum of eighty-two dollars and fifteen cents. We are disposed to regard the rest of the defendant's charge as

fairly satisfied out of the money he got for the gin that he refuses to pay for.

The judgment of the county court is therefore reversed, and judgment is to be entered in this court for said eighty-two dollars and fifteen cents, with interest to be computed from the 30th of September, 1859.