Tabiaeeebo, J.
This action was commenced on the part of the State against the defendants, to compel them under an act of the Legislature of the State, approved April 4th, 1865, to pay over the sum of 'twelve hundred dollars, alleged to be due to the State, arising from the tax of one-fourth of one per cent, imposed by that act upon the gross amount of sales of defendants, as commission merchants, from 1st July to 31st December, 1865, and twenty per cent, on the amount of the tax as a penalty for the non-compliance on their part with the act aforesaid; the whole amount, tax and penalty, being twelve hundred dollars.
In their answer, the defendants state that between the 1st July and 31st of December, 1865, they sold in the city of New Orleans of “Western Produce” to the amount of four hundred thousand dollars, consisting of bacon, pork, flour, corn, rope, lard, and other articles of that kind ; that these commodities were consigned to them by citizens of the United States, residing beyond the limits of the State of Louisiana, for salo, and that the same were .sold by them for and on account of the non-resident owners, who were citizens of Missouri, Illinois, Indiana, Ohio, Kentucky, and other States on the Mississippi river, and its various tributaries; that these sales were made of the said produce in the form in which it was prepared by their constituents, beyond the limits of Louisiana for market, for a commission of two and a half per cent, upon the gross amount of the sales. They contend that the property thus introduced into the State of Louisiana from other States and thus sold, is exempt by the Constitution of the United States from import duty, or other tax for the benefit of the State of Louisiana. They further aver, that the tax aforesaid is unequal, as it discriminates in favor of a large class of persons who pursue the same business with themselves, and that it is for this reason, repugnant to the Constitution of the State of Louisiana, in relation to the imposition of taxes.
Judgment was rendergej ip the Cou^-t below in favo;- of the defendants, and tbe State appeals,
*425 In. the formation of the Constitution of the United States, it was foreseen that the inter-communication between the States might be a fruitful source of agitation and trouble. Under the Articles of Confederation this trouble was distinctly foreshadowed, as well as that likely to arise from leaving to the States the power to lay impost upon foreign importations. The last-named pretension was disposed of by the distinct enunciation contained in section 10 of the 1st Article, that “No State without the consent of the Congress shall lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws, and the net produce of all duties and imposts laid by any State on imports or exports, shall be for the use of the treasury of the United States, and all such laws shall be subject to the revision and control of the Congress.”
The provisions contained in this Article of the Constitution, it is contended in this case by the Attorney-General, refers exclusively to imports from foreign countries; and, in an argument of much learning and research, he maintains that legislation on the subject of inter-State commerce, is not exclusively entrusted by the Constitution to Congress.
From numerous authorities invoked by him he deduces the conclusion, that in'the ease before the Court “the tax on gross sales or receipts is simply a legitimate exercise of the taxing power, and in no manner a regulation of commerce; nor is it even an indirect interference with the regulation of commerce; and should it be considered a regulation of commerce, it is not thereby repugnant to the Federal Constitution.”
The doctrine,, that the States have a concurrent power with Congress “to regulate commerce between the States,” would seem to involve the very difficulty which it was obviously the purpose of the framers of the Constitution to provide against. Looking to the objects aimed at, the inference seems clear that they intended to prohibit the exercise of this power by the States. The abuse to which such a power might lead may well be illustrated by the position and commercial advantages of the State of Louisiana. It controls the outlet to the ocean of the great river, which, with its vast tributaries, flows through the boundaries of so many wealthy and populous States. Near that outlet, and within the same State, is found the common mart at which the various products of the States of the Mississippi must all meet for sale, or for exportation to other States of the Union or to foreign countries. What if Louisiana should impose a tax upon cotton, coming from Arkansas to New Orleans to be shipped to Massachusetts, or upon tobacco from Kentucky and Missouri, destined for Europe? It is plain that this would be in derogation of the common right which belongs to the people of all the States of the Union, the right to the free use of the Mississippi river. It would be, in the one case the laying an export duty which is plainly forbidden, and in the other, the imposing a burden upon the commercial intercourse between the States, and to that extent a regulating the commerce between them. And would it not amount to the same thing if Louisiana should impose a tax upon the products of other States brought to New Orleans for sale, belonging to individuals of other States, and sold here as their property; or place the tax upon the proceeds of such property when ’ *426 sold? It is shown, in the case in controversy, that the products sold by the defendants were prepared and put up by the owners and producers in the States from whence they were brought, and sold in New Orleans in the same form in which they came here, that they were sold for the Owners, and that the defendants have no interest whatever in the proceeds beyond their commissions for making the sales. Until a change in the ownership, or in the condition of the merchandise has taken place, so that it becomes incorporated with, and forms part of the property of the State, it is not subject to State taxation. When sold, the money represents the thing sold; it belongs to a citizen of another State, and is equally exempt from the tax.
But, whatever opinions may have been at any time expressed, favoring the view that the power to regulate commerce among the States is not exclusively vested in Congress, we consider that the authorities are decidedly against that opinion. The question was considered by the Supreme Court of the United States, in the case of Gibbons v. Ogden, 9 Wheaton 1. It was there declared that the power of Congress “ to regulate commerce with foreign nations and among the States ” is complete in itself, and that it has no limitation other than are presented by the Constitution. In the same Court the subject underwent a fuE examination, in the case of Brown v. The State of Maryland, 12 Wheaton 410. This case arose upon a statute imposing a license tax upon all persons who should sell imported goods. It was held to be a tax upon all imports—an import duty, and was therefore unconstitutional. The Court said: “All must perceive that a tax upon an article imported for sale is a tax on the article itself. ’ It is true the State may tax occupations generally, but this tax must be paid by those who employ the individual, or is a tax on his business. The lawyer, the physician or the mechanic, must either charge more on the article on which he deals or the thing is taxed through his person. This, the State has a right to do, because no constitutional prohibition extends to it. So a tax on the occupation of an importer is, in like manner, a tax on importation. It must add to the price of an article, and be paid by the consumer or by the importer himself, in like manner as a direct duty on the article itself would be paid. This the State has not the right to do, because it is prohibited by the Constitution.” In conclusion, the Court say: “It may be proper to add that we suppose the principles laid down in this case to apply equally to importations from a sister State.” In what are called the Passenger cases, 7 Howard 410, the question was whether the States could levy a tax upon passengers coming in foreign vessels to the United States. Mr. Justice Wayne, in delivering his opinion, said: “Do not the constitutional powers of the United States act upon the territory as well as upon the sovereignty of the States to the extent of what was their sovereignty, before they yielded it to the United States. . Can any one of the sovereign powers of the United States be carried out by legislation without acting upon the territory and sovereignty of the States? This being so, Congress may say and does say, whence a voyage may begin in the United States, and where it may end in the United States. Though in its transit it enters the territory of a State, the political jurisdiction of the State cannot interfere with it by taxation or otherwise until the yoyage has en4ed; pot until the perspns *427 who have been brought as passengers have been landed or the goods which may have entered as merchandise, have passed from the hands of the importer, or have been made by himself a portion of the mass of the general property of the State. ”
To the same purport is the case of Hays v. The Pacific Railroad Company, 17 Howard 597. A tax was imposed by the State of California upon the steamships of a line of vessels of- that class engaged in navigating the Pacific Ocean from St. Francisco to Panama. The Court held for the the same reasons given in the Passenger oases, that the State had no jurisdiction.
The case of Almy v. California, 24 Howard 169, was that of a tax imposed by the State upon the gold or silver coin, or gold dust transported from any place within the State to any place without the State. The tax was laid in the form of a stamp duty on the bill of lading. The Court held that it was a tax on exports, and was unconstitutional. In this case the export was from California to New York. We regard it as important, because it affirms the case of Brown v. The State of Maryland. In Almy v. California, the Supreme Court remarked, that the decision in Brown v. The State of Maryland, has always been regarded and followed as the true construction of the clause in the Constitution now in question. It shows that the Court regarded the inter-State commerce as standing upon the same ground, as to the constitutional protection, as foreign commerce; and that the closing paragraph, which we have before cited from the opinion in the ease of Brown v. Maryland, viz: “ that the principles laid down in this case apply equally to importations from a sister State,” announces the settled doctrine on the subject.
The conclusion we reach, after a general view ot the question, and a careful examination of the authorities, renders it unnecessary for us to consider the other ground of defence, the illegality of the tax arising from its alleged inequality, and therefore in derogation of Article 124 of the Constitution of the State of Louisiana.
It is therefore ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs in both courts.