NELLIE P. BAKER v. THE OHIO FARMERS' INSURANCE          70   199
                                                        79   253
COMPANY.

*Insurance—Application—Limitation upon authority of agent—*
*Waiver—Estoppel.*

1. An application for insurance filled up by an agent, to which he
   signs the applicant's name, *all* without her knowledge or
   authority, and *after* his acceptance of her *verbal* application for
   the same insurance, upon which he had issued a policy, is not
   binding upon the assured, nor will the *after* delivery of the pol-
   icy, in which reference is made to her *written* application, be
   notice to her thereof, but she may treat such reference, under
   the circumstances, as surplusage.
2. An insurance company issuing a policy upon an application not
   signed by the assured, and made without her knowledge and
   consent by its agent, is estopped from holding her to the state-
   ments made therein, upon the principle that it would be a fraud
   upon her so to do, and must be considered as taking the insurance
   upon a *prior verbal* application made to the agent, and with
   knowledge of the statements made therein, and to have *waived*
   a written application.
3. For a review of several Michigan cases touching the question
   involved, see the opinion.

Error to Saginaw. (Gage, J.)   Argued April 12 and 13,
1888.   Decided May 11, 1888.

*Assumpsit* on an insurance policy.   Defendant brings
error.   Affirmed.   The facts are stated in the opinion.

*John D. Conely,* for appellant, contended:

1. In the following cases evidence of conversations had between the
   applicant and agent, pending negotiation for insurance, was
   received, and the knowledge of the agent held to be that of the
   principal, and the policy thereby maintained : *Ins. Co. v. Hall,*
   12 Mich. 213; *Ins. Co. v. Olmstead,* 21 Id. 246; *Ins. Co. v. Throop,*
   22 Id. 160 ; *Ins. Co. v. Horton,* 28 Id. 173 ; *Ins. Co. v. Lewis,* 30
   Id. 41 ; *Ins. Co. v. Earle,* 33 Id. 143 ; *Kitchen v. Ins. Co.,* 57 Id.

135; *Brown v. Ins. Co.*, 65 Id. 306; but in all of these cases except *Ins. Co. v. Lewis*, the *powers* of the agent were in no way restricted, nor was there any agreement that statements made by or to him should not bind the company.

2. *Such* conversations have been declared of no force, as against the company, under certain circumstances, in *Ins. Co. v. Lewis*, 30 Mich. 41; *McIntyre v. Ins. Co.*, 52 Id. 188; *Cleaver v. Ins. Co.*, 65 Id. 527; and in accord with the doctrine in the Cleaver case are *Catoir v. Ins. Co.*, 33 N. J. Law, 487; *Moore v. Ins. Co.*, 72 Iowa, 414; *Chase v. Ins. Co.*, 20 N. Y. 55; *Enos v. Ins. Co.*, 67 Cal. 621 ; *Ins. Co. v. Fletcher*, 117 U. S. 519, 520; and in the three cases last named the language of the restrictive clause was similar to that used in the case at bar.

*D. P. Foote*, for plaintiff, contended as stated in the opinion.

MORSE, J.   The undisputed facts in this case are these:

The plaintiff lives in the city of Saginaw, where she owned a lot having a dwelling-house and barn thereon. Upon these premises was a mortgage dated December 31, 1884, and given for $900.   Upon May 24, 1886, there was about $608 due upon it.   Upon that day there was issued to her a policy of insurance in the defendant company, insuring the house for $1,200 and the barn for $300, against loss or damage by fire, for a period of 45 days.   June 20, 1886, the house was totally destroyed by fire, and the barn injured to the extent of $35.   The company refused to pay the loss, and she brought this suit.

The policy referred to an application, describing it as an " application and survey No. 1234."   The word " No." and the figures " 1234 " were in writing.   The policy declares that the application forms part of the policy, and it states that—

" Upon any false representation by the assured of the condition, situation, or occupancy of the property, * * * or any misrepresentation whatever, * * * this insurance shall be void."

It also contains the following provisions:

" It is expressly agreed that this company shall not be bound by any act or statement made to or by the agent, or other person, which is not contained in the written application or indorsed on this policy. And it is hereby understood and agreed by and between this company and the assured, that this policy is made and accepted in reference to the foregoing terms, and to the conditions printed on the back of this policy, which are hereby declared to be part of this contract."

On the back of the policy are certain printed conditions, of which the second is as follows:

" If the premises insured herein be incumbered in any way, this policy shall be void, unless * * * the incumbrance on the premises be expressed in the application."

The plaintiff never made any written application for insurance, nor authorized any one to make any for her, and did not know that any existed until the time of the trial in the court below.

One W. J. Moffitt, the local agent of the defendant at East Saginaw, solicited the insurance. He talked with the plaintiff about the insurance, was informed by her of the existence of the mortgage upon the premises, looked them over himself, concluded to take the insurance, received the payment of the premium on May 24, 1886, and told plaintiff that her property was insured from 12 o'clock noon of that day. He asked her whether she wanted the loss, if any, payable to her or the mortgagee. She told him to make it payable to herself. Nothing was said about any written application. A week or more after this, Moffitt, without any authority from Mrs. Baker, and without her knowledge, filled out an application in her name, and signed plaintiff's name to it. He testified that he had no authority from her to do so. It does not appear whether the application was received by the company or not before the policy was delivered to Mrs. Baker, but the policy was dated and countersigned upon the day the insurance was taken,—May 24, 1886.

Moffitt swears he delivered the policy May 25, 1886. Plaintiff swears that she did not receive it for 10 or 12 days. Mr. House, the State agent, testifies that he sent the application on to the company after receiving it from Mr. Moffitt. He fails to state when he received it, or when he forwarded it. Plaintiff claims that she did not read the policy after receiving it; but this is immaterial.

The application contained the following printed question: "Is the property incumbered?" The written answer was, "None."

No written consent to this mortgage was written upon the policy, nor was any mention of it made therein. Neither was it expressed in or on the application filled out and sent on by Moffitt.

The circuit judge instructed the jury, substantially, that the application not being made by Mrs. Baker, or by Moffitt with her knowledge and consent, she had a right to believe that the application made by Moffitt,—knowing that she had made none,—contained her statements as she had made them to him; and if the jury believed that she stated to Moffitt the existence and lien of this mortgage upon the premises, she was entitled to recover. She obtained judgment for the full amount of her loss and interest.

It is plain that Mrs. Baker was not bound by this application, nor do I think she was chargeable with notice of it. The learned counsel admits, as he must, that if, under the circumstances of the taking of this insurance, the company at its home office had filled out and signed this application in the name of plaintiff without her knowledge and consent, and undertook to bind her in the policy with the terms of such application, it would have been a fraud upon her, which the law would not permit to prevail. He also admits, as he must, that in the filling out of this application Moffitt was the agent of the company, and not the agent of Mrs. Baker. These things being admitted, it follows that the filling out of

this application is the act of the company, and a fraud upon the plaintiff.

The policy must stand as if no written application had been made, and that part of the policy referring to it treated as surplusage, and out of the case.

But the learned counsel insists that it was the duty of the plaintiff when she received her policy to read it, and know what her contract was, and, when she saw an application referred to as "No. 1234," that was notice to her that a written application, made by some one, was in existence, and in the possession of the company, and that, if she did not wish to be bound by the statements contained in such application, it was her duty to find out from the company what such application contained, or return her policy.

I do not think so. I think the ordinary, average person receiving such policy, and knowing that he had made no written application, and that none had been required of him, would have considered the reference to such application as mere surplusage, and having no force, as far as his insurance was concerned. To be sure, the words and figures "No. 1234" were in writing, but they followed the printed word "survey" in the following clause:

"On the following property, as described in application and survey No. 1234, and forming a part of this policy."

Any one would be justified, it seems to me, under the circumstances, in the belief that the No. 1234 referred to the number of the survey alone, and not to the application, when there was no application made to the knowledge of the insured.

Nothing is said about the application being a written one, although the word is used three or four times in the policy, until in the very last of the instrument, where this clause is found:

"It is expressly agreed that this company shall not be

bound by any act or statement made to or by the agent, or other person, which is not contained in the written application or indorsed on this policy."

This latter clause is the one mainly relied upon for the defeat of the plaintiff's action. The testimony showing that Moffitt was informed and knew of the existence of this mortgage, at the time the policy was issued, was objected to upon the ground that, under this clause, such testimony was not admissible, as the fact of the incumbrance was not indorsed on the policy or expressed in the application.

As before shown, there was no written application in this case. There was an oral application, and in that application the testimony shows the company was apprised of the incumbrance. It was expressed in the oral application, and the company is bound by such application, and must be deemed to have waived the incumbrance.

It is argued that this clause in reference to acts and statements, not indorsed upon the policy or contained in the written application, having no binding effect upon the company, is a wise provision, and one calculated to guard against the dishonesty of agents, as well as the perjuries of claimants. But this company, receiving a written application entirely in the handwriting of the agent, even to the signature of the applicant, takes it without further inquiry, and issues a policy upon it, or consents to one already issued and delivered upon it. To allow it to thus blindly profit by the fraud of its agent, of which the assured is entirely innocent, can, however, serve no useful purpose, and would be an encouragement to the repetition of like frauds in the future, not only by this agent, but by others.

This case differs materially from those where the assured has signed the application and had an opportunity to read over the answers written down by the agent in his behalf. There the assured, instead of the company, is guilty of neg-

ligence. Here the assured was not negligent, but the company was.

We held in the case of *Brown v. Ins. Co.*, 65 Mich. 306 (32 N. W. Rep. 610), that if the agent obtained the signature of the assured to a blank application at her house, and then filled out the answers falsely at his office, without her knowledge, the insurance company could not defend upon the ground of the untruth of such answers. In that case the assured trusted the agent with a blank application signed by her, and there would be some reason to argue therefrom that she thereby made him her agent, as far as the filling out of the application was concerned. There would also be some force, in such a case, in the argument that it was her duty upon receiving her policy, and ascertaining therefrom that her answers in such application were to be taken as warranties, to find out at once from the company what answers the agent had written, or be bound thereby if she saw fit to retain her policy without such inquiry. But we held, nevertheless, that the fraud of the agent could not bind her.

In the case under consideration the assured had in no manner authorized or permitted the agent to act for her, and his act, as before shown, was the act of the company, in which she had no part or knowledge. Nor was she bound in any way to know it, or to make inquiry in regard to it.

We are not referred to any case wherein the policy of insurance contained the precise clause relied upon in the present case, to wit:

"That this company shall not be bound by any act or statement made to or by the agent, or other person, which is not contained in the written application or indorsed on this policy."

The counsel admits that this language is comparatively new in insurance policies, but claims that his view of the case, and the effect of this clause, is sustained by the following authorities: *Ins. Co. v. Lewis*, 30 Mich. 41; *McIntyre v.*

*Ins. Co.*, 52 Id. 188 (17 N. W. Rep. 781); *Cleaver v. Ins. Co.*, 65 Id. 527 (32 N. W. Rep. 660); *Catoir v. Ins. Co.*, 33 N. J. Law, 487; *Moore v. Ins. Co.*, 72 Iowa, 414 (34 N. W. Rep. 183); *Chase v. Ins. Co.*, 20 N. Y. 55; *Enos v. Ins. Co.*, 67 Cal. 621 (8 Pac. Rep. 379); *Ins. Co. v. Fletcher*, 117 U. S. 519, 520 (6 Sup. Ct. Rep. 837).

In *Chase v. Ins. Co., supra,* the application was signed by the assured, and it contained a clause expressly stating that the company should not be bound by any act done or statement made to or by any agent, or other person, which was not contained in such application. As the assured signed this application, he was presumed to know the contents of it. He was, therefore, not permitted to show the knowledge of the agent, who examined the premises and wrote up the application, that it was not correct in its statements. 20 N· Y. 55, 56.

In *Enos v. Ins. Co., supra,* the policy contained a provision—

"That this company shall not be bound by any act or statement which is not contained in the written application, or indorsed on this policy."

It was held that the local agent could not waive any of the provisions of the policy. It does not appear from the report of the case what particular thing or point in the policy was undertaken to be waived, or in what manner, except that such waiver, whatever it may have been, was not written upon the application or the policy. 67 Cal. 622, 623 (8 Pac. Rep. 380, 381).

*Moore v. Ins. Co., supra,* does not touch the point involved here, as will be seen by an examination of the case.

The case of *Catoir v. Ins. Co.*, 33 N. J. Law, 487, was one where the policy contained the following clause:

"Agents are not authorized to make contracts for the company, nor to write upon the policy, except his signature,

when necessary to the first receipt of premium, nor to waive forfeiture of the same."

A premium was not paid in time, the result of which was to forfeit the policy, unless the plaintiff proved that the company had legally waived the payment as it became due. The plaintiff showed no waiver except that the local agent had orally consented that the plaintiff could pay it afterwards, "when he had it." The policy was upon the life of plaintiff's wife. Held, that the agent could not waive the payment in the face of this provision in the policy.

In *Ins. Co. v. Fletcher, supra,* the assured signed the application, but it was claimed that he did not know it was to be a part of his policy,—that one agent read the questions over, which he answered truthfully, while another agent pretended to write down his answers; that he had no reason to suppose that such answers were taken down differently from those given; that he was asked to sign the paper to identify him as the party for whose benefit the policy was to be issued, and that he signed it without reading it, and did not read his policy when he received it, nor at any time. The answers so written were false, and not as the assured gave them. The application contained an agreement that if any of the answers were false the policy to be issued upon them was void. The court held it was—

"His duty to read the application he signed. He knew that upon it the policy would be issued, if issued at all. * * * If he had read even the printed lines of his application he would have seen that it stipulated that the rights of the company could in no respect be affected by his verbal statements, or by those of its agents, unless the same were reduced to writing, and forwarded with his application to the home office. The company, like any other principal, could limit the authority of its agents, and thus bind all parties dealing with them with knowledge of the limitation. It must be presumed that he read the application, and was cognizant of the limitations therein expressed." 117 U. S. 529, 530 (6 Sup. Ct. Rep. 842).

It will be seen that the principles laid down in these cases do not reach or govern the case at bar.

In our own State, the case of *Ins. Co. v. Lewis*, 30 Mich. 41, does not aid the defendant. There was a condition in the *policy*, not in the application, that the agent or servant of the company had no right or power to waive or to dispense with any of the terms or conditions of insurance as printed or contained in the application or in the policy, and that there should be no waiver or evasion of any of its terms or conditions, excepting that the same was done with the concurrence of the secretary indorsed on the policy, or specifically acknowledged in writing.

It was claimed, in defense of a suit upon the policy, that the same was void because of an understatement in the application of the amount due upon a mortgage upon the premises.

Judge COOLEY, in speaking for the Court (page 44), says:

"If it were necessary to rule upon this point, it might be a question worthy of consideration whether a condition that 'there shall be no waiver or evasion of any of the terms or conditions of this policy, and no agent or servant of this company has any right or power to waive or to dispense with any of the terms or conditions of insurance as printed and contained in the application, or in this policy,' etc., is not in fairness and justice to be construed as speaking from the time when the policy is received, instead of being made to operate by relation from the date of the application, when no conditions, so far as we are informed, were brought to the knowledge of the insured, except those which were made a part of the application itself. Whatever might be the strict rule of law on the subject, it would not be surprising if a party receiving a policy with such a condition contained in it should put this construction upon it, and govern his action accordingly."

If this very sensible suggestion of Judge COOLEY should be taken as good law, it would dispose of the present case against the defendant, as the application filed by Moffitt contained no such condition as the one relied upon in the policy

to defeat the plaintiff's claim. There is no language in the opinion of Judge Cooley in the case above noted upon which defendant's counsel can build an argument in support of his position here.

In *McIntyre v. Ins. Co.*, *supra*, the provision that the agent could not waive or dispense with true answers to all questions therein contained was inserted in the application, which the plaintiff signed without fraud or mistake, and, as the Court say, was not "covertly inserted," and did not "enter the contract by a back door."

The defendant's counsel admits that the case of *Cleaver v. Ins. Co.*, 65 Mich. 527 (32 N. W. Rep. 660), differs from the one under consideration in this, that the assured in the *Cleaver Case* had his policy in his possession at the time of his conversation with the agent, while here such conversation was had at the time of procuring the insurance. It differs also in another and radical respect. In the *Cleaver Case* the company waived nothing. The agent's action was claimed to be a waiver, but the policy expressly provided that the agent had no authority to waive or modify the contract. In the case at bar, as before shown, the company was, by issuing a policy upon an application not signed by the assured, and made without her knowledge and consent, estopped from holding Mrs. Baker to the statements made therein, upon the principle that it would be a fraud upon her to do so, and must be considered as taking her insurance upon an oral application, with knowledge of the statements made by her upon such application, and in thus issuing the policy the company must be held to have waived a written application by her, and to have taken the insurance with the incumbrance upon the premises as stated by her to the agent, who in taking such application was its agent, and not hers. The fraud of the agent was not her fraud, nor was she in any respect negligent. The company was negligent, and must suffer, rather than Mrs. Baker, for taking and acting upon

an application wholly, signature and all, in the handwriting of an agent, whom it declined in the express provisions of its policies to trust.

The judgment of the court below must be affirmed, with costs.

SHERWOOD, C. J., CHAMPLIN and LONG, JJ., concurred. CAMPBELL, J., did not sit.