ANGELA MASTERGEORGE

*vs.*

UTICA MUTUAL INSURANCE COMPANY, ET AL.

Superior Court  Middlesex County  File #7444

MEMORANDUM FILED DECEMBER 3, 1938.

Francis R. Danaher, of Meriden, for the Plaintiff.

Ralph O. Wells, of Hartford; William S. Locke, of Hartford; Thomas C. Flood, of Middletown, for the Defendants.

O'SULLIVAN, J.   During 1935, Joseph Ruitto, a dairy farmer, owned two trucks.   One was a Dodge; the other, a Ford.   The latter was used exclusively upon the farm; the former, to deliver milk to his customers.   He carried liability insurance on each car with a Hartford company throughout 1935 until the policies were cancelled on December 30th.   On that morning, which was immediately after receipt of the notice of cancellation, Ruitto's son John, at his father's orders, phoned the office of a Mr. Buggie, agent of the defendant insurer and authorized to bind risks, and asked Mrs. Buggie, who answered, to inform her husband that John's father wished the agent to call at his home in Portland to talk about liability insurance on a truck.   At noon when Buggie returned, his wife delivered the message, but due to other engagements he was unable to leave for Ruitto's home until about 7 o'clock in the evening. At apparently the same time, Ruitto left for Buggie's home in Cromwell, and, finding him absent, awaited his return from

Portland. When Buggie arrived they discussed the matter of insuring the Dodge, and after obtaining certain data, Buggie filled out an application, and then stated that the policy to be based upon it would be binding from the time of the telephone call to Mrs. Buggie in the morning. On the following day, Buggie forwarded the application to the underwriting department of the defendant insurer.

Some 15 to 30 minutes before Buggie and Ruitto had set out from their respective homes, the Dodge, while being operated by Ruitto's son in the course of delivering milk, was involved in an automobile collision in Middletown. In spite of a spirited claim to the contrary, I am confident that the first knowledge of this accident reached Ruitto only after he had returned to his home about 10 p.m. Buggie learned of it when reading his newspaper the next morning and received additional information when Ruitto orally reported its occurrence later on the same day.

On January 10, 1936, Buggie received from the underwriting department of the company a liability policy for the Dodge, which by its terms purported to cover the truck for one year from 12:01 a.m. on December 30, 1935. This was in accordance with the application. Buggie examined the policy, countersigned and then delivered it to Ruitto, who put it away for safe keeping without having read it.

The plaintiff had been injured in the accident above referred to, and, on December 8, 1936, after bringing suit against Ruitto and his son, obtained a judgment for $1,548.50 against both. That action was defended by attorneys for the insurer under a non-waiver agreement. Thereafter an appeal was taken under a similar reservation of rights to the Supreme Court of Errors, which affirmed the judgment against Ruitto and his son. *Grillo vs. Bonauito,* 123 Conn. 226.

The present litigation involves the right of this plaintiff, as a judgment creditor of Ruitto, to recover under the policy in view of section 4231 of the General Statutes, Revision of 1930, and of certain defenses raised by the answer. By an order of court, based upon a motion of the insurer, Ruitto and his son were cited in and have appeared as parties defendant. This course was pursued after the defendant insurer had filed a cross-complaint seeking reformation of the policy.

To make reference to an elementary rule of law, it is obvious

that the minds of the parties did not meet until after the accident occurred. No contract came into being until after that event. By its terms, however, it was to function retroactively and from this fact arises the problem as to whether liability insurance can antedate in its coverage the time of its issuance so as to insure against events that have already occurred.

At first blush, it may seem anomalous that a policy of insurance could cover such a situation. Nevertheless, precedents in analogous cases in the field of marine and fire insurance furnish guiding authority for the instant case. It is a familiar principle of marine insurance that a policy on a vessel which has previously been totally lost, but of which the owner has no knowledge at the time of procuring the insurance, is valid. *Arkansas Ins. Co. vs. Bostick & Ryan,* 27 Ark. 539; *Paddock vs. Franklin Ins. Co.,* 11 Pick. (Mass.) 227. This is, in effect, a stipulation for indemnity against past as well as future losses. *Hooper vs. Robinson,* 98 U.S. 528, 25 L. ed. 219. Nor is it essential that the phrase "lost or not lost" appear in the policy. "The phrase 'lost or not lost' is not necessary to make a policy retroactive. It is sufficient if it appear by the description of the risk and the subject-matter of the contract that the policy was intended to cover a previous loss. Contracts of the kind are as valid as those intended to cover a subsequent loss, if it appears that the insured as well as the underwriter was ignorant of the loss at the time the contract was made." *Insurance Co. vs. Folsom,* 18 Wall. 237, 251, 21 L. ed. 827, 833; *Hughes vs. Mercantile Mutual Ins. Co.,* 44 How. Prac. (N.Y.) 351. The vital question is one of good faith.

These same principles have been applied to fire insurance. *Security Fire Ins. Co. of N. Y. vs. Kentucky Marine and Fire Ins. Co.,* 7 Bush (Ky.) 81, 3 Am. Rep. 301; *Wales vs. N. Y. Bowery Fire Ins. Co.,* 37 Minn. 106, 33 N.W. 322; *Commercial Ins. vs. Hallock,* 27 N.J.L. 645; *El Dia Ins. Co. vs. Sinclair,* 228 Fed. 833 (certiorari denied, 241 U.S. 661).

Nor is it *ultra vires* for an insurance company to issue a policy to act retroactively, unless it knows that the property presumed to be covered is nonexistent. *Henshaw vs. Insurance Co.,* 30 Misc. 405, 73 N.Y.S. 1. Parties to a contract have an inherent right to assume obligations antedating their agreement if they so elect, if there is good faith and if the contract is supported by consideration. *Continental Casualty Co. vs. Industrial Commission,* 61 Utah 16, 210 Pac. 127.

There is no sound or appealing reason to require the placing

of liability insurance, in the respect under discussion, in a category different from that occupied by marine and fire policies. Accordingly, on the authority of the cited precedents, it is determined that the defendant insurer's policy was retroactive in nature and provided coverage during the period expressly stated.

By way of parenthesis at this point, it should be observed that whether Buggie exceeded his authority in binding the risk from the beginning of the day is of no moment. This action is not based upon the oral binder made during the evening of December 30th. The action is upon the policy issued by the home office after it had knowledge, through a familiar rule of law, that an accident had occurred during the period covered by the binder, because, as will be recalled, on December 31st Buggie obtained full information about it. Under the conditions and limitations outlined in *McKay vs. Aetna Life Ins. Co.*, 118 Conn. 538, his knowledge was imputed to his principal. Nevertheless, some ten days after it had received the application, the insurer issued its policy, forwarded it to Buggie, who, on January 10th examined and countersigned it and then delivered it to the assured. On January 20th, the home office received a report from an independently conducted credit agency, in response to an inquiry of the insurer. This report recited that "a civil suit is pending involving the son who was in a recent accident. . . . about three weeks ago." Still, the insurer did nothing save to write some interdepartmental notes and memoranda concerning the desirability of the risk. In the meantime it accepted and retained the premium which Ruitto had paid. On April 22nd, it issued an endorsement to reduce the premium rate. By this endorsement, it appears that the term of the policy to which it appertained "shall be from 12:01 a.m. on December 30, 1935", and that "nothing contained (in the endorsement) shall waive, vary, alter or extend any provision in the policy other than" as affecting the rate. And finally, when the policy was cancelled on April 22nd, the insurer returned what it claimed was the unearned premium. Yet the proof is so lacking in preponderance and clarity that it is impossible to state whether any allowance was made for that portion of the term for which Ruitto had paid but which, it is claimed, was beyond the real period of coverage. Surely from these impressive circumstances, no serious question can be made against the ratification of the action of the agent in binding the risk as he did.

But, the insurer argues, there was an absence of good faith, which, if not actually characterizing Ruitto's dealings with Buggie, was none the less present by legal implication. Its claim is that Ruitto had imputed knowledge of the accident in that the law presumes he knew such facts as came to the attention of his son while driving the Dodge in the course of his employment. Counsel cite the famous case of *Proudfoot vs. Montefiore,* L.R. (1867) 2 Q.B. 511, which held that where a shipping agent knew of the loss of a vessel but failed to communicate the information immediately by telegraph to the owner who, he knew, was about to apply for marine insurance on the vessel in ignorance of the loss, the agent's knowledge was the owner's knowledge, thus rendering fraudulent the latter's application for the insurance.

An insured is under obligation to disclose not only such facts as are known to him, but also those facts known to his agent, provided (1) it is the agent's duty to acquire and communicate information of the facts in question, and (2) it is possible for the agent, in the exercise of reasonable diligence, to forward such communication before the making of the insurance contract. *Vance, Insurance* (2nd ed. 1930) p. 354. Obviously, Ruitto's son did not have ample time to inform his father. Directly after the accident the son had been arrested and was in the custody of the police until long after the contract was made. In the light of these circumstances, knowledge cannot be imputed to Ruitto.

Another claim of the insurer is that the plaintiff, as a contract beneficiary, has no standing since there is neither allegation nor proof of the insolvency of the assured evidenced by return of execution against him unsatisfied. This claim is advanced because of a provision in the policy that "the insolvency or bankruptcy of the insured hereunder shall not release the Company from the payment of damages for injuries sustained or loss occasioned during the life of this policy, and in case execution against the insured is returned unsatisfied in an action brought by the injured, because of such insolvency or bankruptcy, then an action may be maintained by the injured person against this Company under the terms of this policy, for the amount of the judgment in the said action not exceeding the amount of this policy."

The policy sets forth that the insurer shall pay on behalf of

the assured all sums which the latter shall become obligated to pay by reason of liability imposed upon him by law. There is no longer any need to answer the one-time vexing question as to whether such a contractual provision classifies the policy as one against loss rather than liability. *Morehouse vs. Employers' Liability Assurance Corp.*, 119 Conn. 416. The legislature has annihilated the distinction by declaring that "each insurance company which shall issue a policy to any person....insuring against loss or damage on account of the bodily injury....of any person....for which loss or damage such person....is legally responsible, shall, whenever a loss shall occur under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him....Upon the recovery of a final judg-ment against any person....for loss or damage on acount of bodily injury....if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment shall not be satisfied within thirty days after it was rendered, such judgment creditor shall be sub-rogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defend-ant in such action could have enforced his claim against such insurer had such defendant paid such judgment" (Gen. Stat. [1930] §4231).

This statute, being in force on December 30, 1935, must be regarded as entering into and forming part of the contract. 2 *Cooley, Briefs on Insurance* (2nd ed., 1928) p. 1102. Nor may it be nullified by the insurer inserting a counteracting clause in the policy to the contrary. *Chandler vs. John Hancock Mutual Life Ins. Co.*, 180 Mo. App. 394, 167 S.W. 1162.

The provision of the policy, above recited, does not have the significance which the insurer attaches to it. However, if it did, it would be of no moment because of its antagonism to the statute. This plaintiff need not allege or prove the insolvency of Ruitto. It is ample if it is shown that a judgment was ren-dered against the assured which was not paid within 30 days after its rendition and "if the defendant in such action was in-sured against such loss or damage at the time when the right of action arose."

Continuing in its claim that this plaintiff has no standing, the insurer argues that as a factual matter the insurance was not in force at the time of the accident. If, by this, it means

that the contract post-dated the time when the accident occurred, no challenge may be successfully made upon the truth of that assertion. But that is not the controlling factor. The unmistakable intent of the statute conferring the right of subrogation upon an injured party is to compel an insurer to pay directly to such injured person any judgment obtained against another who has paid for and been given coverage for the events upon which the judgment was rendered. Ruitto's policy, by retroaction, was such that he was insured against loss at the time when the plaintiff's right of action arose. Had Ruitto paid the judgment, he could have collected from the company. It would be far too strained to hold that, under the peculiar facts of this case, a judgment creditor cannot be subrogated "to all the rights of the defendant." The plaintiff ought to recover, then, unless other defenses bar that right.

Throughout the case, the insurer has insisted that the policy was issued through a mistake and by its answer asks the court to deny recovery for the plaintiff and by its cross-complaint seeks to reform the policy so that the time of coverage shall commence at 9 p.m. on the evening of December 30th. What occurred on that evening, does not suggest, let alone establish a mistake on the part of either party. Nor was there fraud or bad faith to taint their dealings. Buggie bound the risk and both he and Ruitto intended to have issued exactly what subsequently was issued in the form of a policy. Any claim to the contrary is unfounded.

Another defense raised by the insurer is that no immediate written notice of the accident was given by the assured, as required by condition C of the policy. Where such a condition is found in an insurance contract, the furnishing of a written notice is a condition precedent to any right of action upon the policy. *Lee vs. Casualty Co. of America,* 90 Conn. 202. This limitation extends to one claiming to be subrogated to the rights of the assured. *Harris vs. Phoenix Insurance Co.,* 35 Conn. 310. However, the insurer may waive the condition and in this case has done so by a denial of liability on other grounds. 7 *Cooley, Briefs on Insurance* (2nd ed., 1928) p. 6019, and cases cited. The non-waiver agreement, drawn by counsel for the insurer, made no mention of a failure to receive immediate written notice from Ruitto. This agreement must be strictly construed and not be extended by implication. *Beauchamp vs. Retail Merchants Ass'n.,* 38 N.D. 483, 165 N.W. 545. The condition set forth in the policy has been waived.

A further defense of the insurer is based upon an alleged incorrect statement found not only in the application but also in the schedule, so-called, in the policy. Item 11 of this schedule recites that "no company has cancelled motor vehicle liability insurance for the named assured (Ruitto) during the past three years, except as follows: no exceptions." This was obviously not a correct statement of the fact, because only just prior to seeking insurance from the defendant insurer, a Hartford company had cancelled a liability policy upon the Dodge.

The circumstances accounting for this statement in the schedule were not of Ruitto's creation. While he was in Buggie's home on the evening of December 30th, the latter took from his desk an application form and wrote in the appropriate spaces the answers to various questions. At no time did he inquire whether any company had previously cancelled a liability policy. On his own initiative, and unbeknownst to Ruitto, he placed the symbol "no ex" after the query in question. Ruitto is an Italian, unable to read, and scarcely able to write his own name. The application for insurance was never shown to him nor did he sign it either before or after it was filled out. As is customarily done in every day practice, he accepted and relied on the statement of the agent that the risk was covered.

When the policy was delivered to him, after it was inspected by Buggie, he did not read it, nor could he have done so save through the kindness of another.

The general rule is that where a person of mature years and who can read and write, accepts a formal written contract affecting his pecuniary interests, it is his duty to read it and notice of its contents will be imputed to him if he negligently fails to do so; but this rule is subject to qualifications and it applies only if nothing has been said or done to mislead the person sought to be charged or to put a man of reasonable prudence off his guard in the matter. *Ursini vs. Goldman,* 118 Conn. 554, 562.

To require Ruitto, uneducated as he was, to pore over the fine print of as technical an instrument as an insurance policy in order to ascertain if some representation which he had never made was inaccurately stated by the insurer, and failing so to do, to impute knowledge to him of such inaccuracy in a policy which he had been expressly told would protect him against liability, defies the fundamentals of common sense and everyday practice, and furthermore goes far beyond the rule

above stated. Under all of the circumstances, there was no duty on his part, at any time, to read the policy, nor is knowledge of the misstatement to be imputed to him. *Back vs. Peoples National Fire Ins. Co.,* 97 Conn. 336.

Finally, an insurer is estopped to urge the falsity of representations contained in its policy where they were inserted without the knowledge or consent of the insured, who made no representations whatever concerning the matter to which they relate. *Davern vs. American Mutual Liability Ins. Co.,* 241 N.Y. 318, 150 N.E. 129; *Sawyer vs. Equitable Accident Ins. Co.,* 42 Fed. 30; *Baker vs. Ohio Farmers' Ins. Co.,* 70 Mich. 199, 38 N.W. 216; *Walker vs. Fireman's Fund Ins. Co.,* 114 Ore. 545, 234 Pac. 542; *North River Ins. Co. vs. Lewis,* 137 Va. 322, 119 S.E. 43; *Collum vs. National Fire Ins. Co.,* 181 Wis. 425, 195 N.W. 333.

Judgment will therefore enter for the plaintiff to recover $1,798.15 from the defendant insurer. This represents the amount of the judgment obtained in 1936, together with interest thereon and the taxable costs of that action. Judgment may further enter on the cross-complaint for the plaintiff and the defendants, John and Joseph Ruitto, and for the two latter to recover their costs.